564 A.2d 1312

**ERIE INSURANCE EXCHANGE, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1989.

Filed Oct. 16, 1989.

Berle M. Schiller, with counsel, Lawrence J. Bunis, Astor, Weiss & Newman, Philadelphia, for petitioner.

Terrance A. Keating, Asst. Counsel, with him, Victoria A. Reider, Deputy Chief Counsel, and Linda J. Wells, Chief Counsel, for respondent.

Before CRAIG, BARRY and COLINS, JJ.

CRAIG, Judge.

Erie Insurance Exchange (Erie) appeals an order of the Insurance Commissioner of the Commonwealth of Pennsylvania affirming a determination by the Department of Insurance that Erie's cancellation of Frank S. Piehl, Jr.'s homeowners insurance policy violated the Unfair Insurance Practices Act.[1]

The undisputed facts are that, on June 21, 1988, Erie cancelled Piehl's policy, initially issued on April 28, 1986, and twice renewed annually, because Erie concluded that a "substantial increase in hazard—moral hazard" occurred when Piehl pleaded guilty on May 5, 1988, to possession with intent to distribute marijuana.

Piehl requested that the department review the legality of the cancellation, and on July 7, 1988, the department issued an "Investigative Report/Order," finding that the cancellation violated the Act because "the incident that is referred to in the cancellation notice happened before the inception date of April 28, 1986." The department then ordered Erie to reinstate Piehl's policy.

[1]. Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§ 1171.1–1171.-15.

Upon Erie's request, the department held a formal administrative hearing on September 13, 1988. At the hearing, Erie presented only the testimony of its counsel. The department did not introduce any evidence.

The commissioner reviewed the record and, on January 10, 1989, issued an order affirming the department's directive to reinstate Piehl's policy. The commissioner concluded that Piehl's "conviction for possession with intent to distribute has not substantially increased the risk that he will destroy, or permit to be destroyed, the premises insured," and that "[a]n insurer who cancels a homeowners policy without showing a substantial increase in hazard during the policy period violates Section 5(a)(9) of the Unfair Insurance Practices Act," 40 P.S. § 1171.5(a)(9).[2]

Erie now appeals to this court, contending that it may cancel Piehl's policy, pursuant to section 5(a)(9), because his pleading guilty to drug trafficking charges constituted a substantial increase in the moral hazard assumed by the insurance company.

The issue for this court is whether a conviction for drug activity evidences an increased risk with respect to a homeowner's insurance policy.

■ In reviewing an order of the Insurance Commissioner, our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or the findings of fact are supported by substantial evidence. *Komada v. Browne*, 97 Pa.Commonwealth Ct. 19, 508 A.2d 1284 (1986).

■ Although the issue in this case is one of first impression, this court has interpreted the phrase "substantial increase or change in hazard" as requiring not just " 'a mere trifling increase in risk,' " but rather " 'a substantial

2. Section 5(a)(9) prohibits an insurance carrier from cancelling or not renewing an insurance policy that has been in effect for at least 60 days unless, along with other non-relevant exceptions, "there has been a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued; or there is a substantial increase in hazards insured against by reason of willful or negligent acts or omissions by the insured."

and material increase, such as the insurer, in view of the terms of the policy, could not reasonably be presumed to have contracted to assume.'" *Lititz Mutual Insurance Co. v. Sheppard,* 43 Pa.Commonwealth Ct. 9, 13, 401 A.2d 606, 608 (1979) (citing 8 *Couch on Insurance,* 304 (2d ed. 1961)). Additionally, as Erie has accurately recited, the definition of "moral hazard" is: "[T]he risk, danger, or probability that the insured will destroy, or permit to be destroyed, the insured property *for the purpose of collecting the insurance."* 8 *Couch on Insurance* 2d (Rev. ed.) § 37A:292 (emphasis added).

Erie's counsel testified that, based on personal experience, and supported by a New York State Journal of Medicine article titled "The relationship of smoking to motor vehicle accidents and traffic violations," smokers and drinkers are greater insurance risks. However, Erie presented no evidence that Piehl's conviction will necessarily result in a *substantial* increase of risk to the insurance company. Furthermore, Erie presented no evidence that Piehl would tend to be a party to the destruction of his property for the purpose of collecting the insurance.

Insurance companies routinely consider the risks involved when setting premium rates for respective policyholders. By no means do we condone the illegal act of drug possession; however, the relationship of Piehl's conduct to the insured risk is not so substantial or material that Erie could not reasonably contract to assume it. Therefore, we hold that the commissioner properly concluded that Piehl's action did not represent an increase in hazard which warrants cancellation of his insurance policy.

Alternatively, Erie argues that, because the department conceded at the hearing that Piehl "does present an increased moral hazard," the commissioner abused her discretion by finding and concluding that the conviction did not reflect an increased risk or hazard. (Finding No. 4, Conclusion No. 2.) However, Erie recognized that the issue remained to be decided by the commissioner, arguing in its brief to the commissioner that "[t]here has been a substantial change or increase in hazard in the risk assumed by

ERIE when the moral hazard substantially changes or increases." Therefore, the commissioner did not abuse her discretion by addressing the issue.

Accordingly, we affirm the decision of the Insurance Commissioner.

COLINS, J., dissents.

## ORDER

NOW, October 16, 1989, the decision of the Insurance Commissioner of the Commonwealth of Pennsylvania, dated January 10, 1989, at No. P88-7-9, is affirmed.